In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3549

D.S., b/n/f GEORGE M. STAHL and
DEBBIE LYNN STAHL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

EAST PORTER COUNTY SCHOOL
CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:11-cv-00431-PRC — **Paul R. Cherry**, *Magistrate Judge.*

ARGUED NOVEMBER 14, 2014 — DECIDED AUGUST 24, 2015

Before BAUER, FLAUM, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellants, D.S. and her
parents, Debbie Lynn Stahl and George M. Stahl, brought suit
under 42 U.S.C. § 1983 against defendant-appellees, East Porter
County School Corporation and Morgan Township Mid-
dle/High School (collectively "East Porter"), and Porter
Township School Corporation and Boone Grove Middle School

(collectively "PTSC"), alleging various constitutional and state-law claims. East Porter and PTSC filed separate motions for summary judgment, which the district court granted in full. D.S. and the Stahls appeal the district court's grants of summary judgment as to their constitutional claims only. We affirm.

## I. BACKGROUND

D.S., a minor, was enrolled as a student in the East Porter County School Corporation, a school system located in Porter County, Indiana, from kindergarten through eighth grade. While there, D.S. asserts that she was the victim of bullying at the hands of her fellow students beginning as early as third grade. D.S. claims that the bullying became more physical and vicious at Morgan Township Middle/High School beginning in sixth grade, when several girls threw basketballs at her head, tripped her, and ignored her during basketball practice. The bullying continued into seventh grade, when someone wrote on her school planner, "I hope you die," and throughout eighth grade, when students continued to pick on her in class, often moving her desk to a corner of the social studies class-room or kicking it.

After many of these incidents occurred, D.S. complained to school officials. However, apart from witnessing the guidance counselor talk to one of the alleged bullies about her behavior toward D.S. and seeing the principal call one of the alleged bullies to her office, D.S. does not know if school officials took any action in response to the complaints. D.S. also alleges that some of her teachers and coaches at Morgan Township Middle/High School expressly participated or were complicit

in the bullying. Specifically, D.S. asserts that her sixth grade gym teacher forced her to participate in gym class even though three of her toes were broken; her sixth and seventh grade basketball coaches gave her little playing time and told her that she was not good at basketball; her seventh grade volleyball coach gave her little playing time and accused her of lying about the number of laps that she ran in practice; and her social studies teacher laughed when her desk was moved by other classmates.

D.S. did not return to Morgan Township Middle/High School after the events of February 9, 2011. On that day, D.S. had stayed after school with the rest of the basketball team. When the girls were told to get their uniforms from the laundry room, D.S. discovered that one of the girls had switched D.S.'s shorts for a larger size. The girls started taunting D.S. and calling her names, such as "fat," and followed her when she tried to get away from the name calling. D.S. called her mother, Debbie, who came to the school to pick up D.S. and, while there, yelled at the alleged bullies, pointing her finger at one of them. Shortly thereafter, D.S.'s father, George, arrived and confronted the principal about the bullying situation. He asked the principal whether she was going to talk to the alleged bullies; in response, the principal said that she was going to speak to Debbie about her behavior when she picked up D.S. from the school that afternoon. George asked the principal for an explanation and, when she didn't respond, demanded to know whether his child was being treated poorly because of money. George then left the school but returned to pick up D.S.'s grandfather, who was already waiting in the gym for the basketball game. Upon

exiting the gym, George and his father confronted several of the alleged bullies. As the two men walked away, the girls started yelling that George and his father had attacked them. This prompted the principal to summon both men into her office and call the police. No students came forward to complain further, so the police did not issue a citation to George or his father.

The next day, the school superintendent, Roy Gardin, contacted the Stahls to set up a meeting with them to discuss the events of the previous day. Gardin explained that Debbie and George would be banned from East Porter property until they were able to meet with him; however, the Stahls never contacted Gardin to set up a meeting. Consequently, George and Debbie were banned from school property for one year. D.S., who was not subject to the ban, voluntarily chose not to return to Morgan Township Middle/High School.

Subsequently, the Stahls contacted Boone Grove Middle School, located within a neighboring school district, the Porter Township School Corporation, to inquire as to whether they could enroll their daughter, who resided out of district, in the school to complete her eighth grade year. George testified that he was advised that the school had "open enrollment," so the Stahls went to Boone Grove the next day to enroll D.S. and take a tour of the school. After the tour concluded, George told the principal of Boone Grove that he and Debbie had been banned for a year from East Porter property. The principal responded that he would have to check with the superintendent to see whether there was any issue with enrollment prior to finalizing D.S.'s transfer. That evening, the principal called the Stahls and informed them that D.S. would not be permitted

to enroll, as they were closing enrollment. Nevertheless, the following Monday, George asked a neighbor to come with him to Boone Grove and inquire about enrollment. George testified that the neighbor was told by school personnel that enrollment was open.

D.S. and the Stahls filed suit against East Porter and PTSC pursuant to 18 U.S.C. § 1983, alleging equal protection and due process violations, as well as municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Stahls also asserted several Indiana state-law claims, including intentional infliction of emotional distress, defamation, and false light invasion of privacy. Both East Porter and PTSC filed motions for summary judgment; D.S. and the Stahls filed a response to East Porter's motion but failed to file a response to PTSC's motion. The district court granted summary judgment in favor of East Porter and PTSC as to all of D.S. and the Stahls' constitutional claims and declined to exercise supplemental jurisdiction over their state-law claims. This appeal followed.

## II. ANALYSIS

### A.  D.S.'s Due Process Claim Against East Porter

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Although the Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property, it does not "impose an affirmative obligation on the [s]tate to

ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Due Process Clause limits the state's power to act, but does not act "as a guarantee of certain minimal levels of safety and security." *Id.* at 195. Accordingly, the Clause generally does not impose upon the state a duty to protect individuals from harm by private actors. *Id.* at 197. However, two exceptions have grown out of this general principle. The first obligates the state to protect individuals with whom it has a "special relationship," such as a custodial relationship that cuts off alternative avenues of aid. *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). The other is the "state-created danger exception," which applies when a state actor's conduct "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been." *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993).

D.S. does not argue that the special relationship exception is applicable to this case, and relies instead on the state-created danger doctrine. To prevail under a state-created danger theory, D.S. must show three things: (1) that the state—here, East Porter—by its affirmative acts, created or increased a danger that D.S. faced; (2) that East Porter's failure to protect D.S. from danger was the proximate cause of her injury; and (3) that East Porter's failure to protect D.S. shocks the conscience. *See King ex rel. King v. East St. Louis Sch. Dist. 189,* 496 F.3d 812, 818 (7th Cir. 2007). D.S. alleges that school officials either created the risk that D.S. would be bullied by her teammates and classmates or rendered D.S. more vulnerable to the risk of being bullied. The district court held that D.S. did

not offer sufficient evidence to create a genuine issue of material fact under the state-created danger standard. We agree.

D.S. has not shown that her teachers and coaches instigated, created, or increased the bullying that she experienced at school. Although D.S. argues that school officials' inaction or ineffective responses to her reports of bullying increased the danger that she faced, the record does not support this contention. D.S. testified that she does not know whether the principal or her guidance counselor took any steps to discipline the bullies apart from the two instances where she saw each of them talk to an alleged bully. She appears to assume that, because she didn't see school officials take more action, none occurred. Putting aside the fact that school officials do not have an affirmative duty to protect students, *J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272–73 (7th Cir. 1990), this assumption is not sufficient to raise a genuine issue of material fact.[1] D.S. also alleges that school personnel participated in the bullying incidents. To advance this claim, D.S. cites to instances in which one of her teachers laughed when students moved D.S.'s desk in class, her gym teacher forced her to participate in gym class while injured because she didn't have a doctor's note, and where she felt that her athletic abilities were not appreciated by her coaches. We agree with the district court

---

[1] Paradoxically, D.S. also contends that school officials, in talking to the alleged bullies on the two occasions that D.S. witnessed, made her more vulnerable to attacks by other students. We will not address this theory because D.S. waived this argument by failing to raise it below. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

that such actions do not satisfy the first element of the state-created danger exception and, even if they did, do not rise to the requisite level of egregiousness to satisfy the third element. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) (holding that state action that shocks the conscience is conduct that may be deemed "arbitrary in the constitutional sense" and that only "the most egregious official conduct" will satisfy this inquiry); *Jackson v. Indian Prairie Sch. Dist. 204,* 653 F.3d 647, 654–55 (7th Cir. 2011); *King ex rel. King,* 496 F.3d at 818–19. Thus, as D.S. has not shown that there is a genuine issue of material fact under the state-created danger standard, she cannot prevail on her § 1983 due process claim against East Porter.

## B. D.S.'s Equal Protection Claim Against PTSC

D.S.'s § 1983 equal protection claim against PTSC similarly fails. The Equal Protection Clause grants to all Americans the "right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322 (1980). As with her due process claim against East Porter, D.S. can seek relief pursuant to 42 U.S.C. § 1983, if she can show that she was deprived of a right secured by the Constitution or federal law, by a person acting under color of state law. *Buchanan-Moore,* 570 F.3d at 827. In order to establish liability under § 1983, D.S. must show that PTSC acted with a nefarious discriminatory purpose and discriminated against her based on her membership in a definable class. *Nabozny v. Podlesny,* 92 F.3d 446, 453 (7th Cir. 1996).

Since D.S. does not allege that she is member of a protected class, she has elected to proceed under a "class-of-one" theory. To establish a successful class-of-one equal protection claim,

D.S. must show that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Further, to be "similarly situated," she and her comparators must be "*prima facie* identical in all relevant respects or directly comparable … in all material respects." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)) (internal quotation marks excluded). Although the question of whether individuals are similarly situated is a question of fact for the jury to decide, "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).

We agree with the district court that summary judgment in favor of PTSC is appropriate in this case. At the onset we note that, in the proceedings below, D.S. failed to respond to PTSC's motion for summary judgment and did not file a "Statement of Genuine Issues" pursuant to Local Rule 56-1(b)(2). Although her failure to respond does not mean PTSC is automatically entitled to summary judgment in its favor, D.S. has waived her right to raise any argument on appeal that she did not raise in the district court. *Domka v. Portage Cty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (noting that "[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal" (internal quotations and citations excluded)). Our analysis is confined to

the existing record, not the new facts that D.S. attempts to put forward on appeal.

Viewed in the light most favorable to the non-moving party, D.S. has not put forth any specific facts showing that there is a genuine issue for trial under the class-of-one equal protection standard. D.S. points to the fact that her father, George, overheard school officials at Boone Grove tell his neighbor that the school had open enrollment, even though the principal of Boone Grove had called George the night before to inform him that enrollment was closed. However, the Stahls' neighbor never actually attempted to enroll his child at Boone Grove, as George Stahl had done. In fact, George testified that he did not know if any out-of-district students were admitted to Boone Grove Middle School after D.S.'s transfer application was rejected. Simply put, D.S. has failed to identify any similarly situated individuals who were treated differently by PTSC with regard to her attempt to transfer schools. Accordingly, her § 1983 equal protection claim against PTSC must fail.

## C.  D.S.'s *Monell* Claims Against East Porter and PTSC

D.S. argues on appeal that there are genuine issues of material fact that preclude summary judgment on her municipal liability claims against both East Porter and PTSC. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" unless the "execution of a government's policy or custom … inflicts the injury." *Monell,* 436 U.S. at 694. However, a municipality cannot be found liable under *Monell* when there is no underlying constitutional violation by a municipal employee. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Since

D.S. cannot show a violation of her constitutional rights under either the Due Process or Equal Protection clauses of the Fourteenth Amendment, the defendants cannot be held liable under *Monell*.

AFFIRMED