In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 17-1562

PARAMOUNT MEDIA GROUP, INC.,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF BELLWOOD and
IMAGE MEDIA ADVERTISING, INC.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 3994 — **Jorge L. Alonso**, *Judge*.

———————————

ARGUED SEPTEMBER 28, 2018 — DECIDED JULY 16, 2019

———————————

Before RIPPLE, SYKES, and SCUDDER, *Circuit Judges*.

SYKES, *Circuit Judge*. In 2005 Paramount Media Group, Inc., leased a parcel of highway-adjacent property in the Village of Bellwood, Illinois, and planned to build a billboard on it. But Paramount never applied for a local permit. When the Village enacted a ban on new billboard permits in 2009, Paramount lost the opportunity to build its sign.

Paramount later sought to take advantage of an exception to the ban for village-owned property, offering to lease a different parcel of highway-adjacent property directly from the Village. But again it was foiled. The Village accepted an offer from Image Media Advertising, Inc., one of Paramount's competitors. Its goal slipping away, Paramount sued the Village and Image Media alleging First Amendment, equal-protection, due-process, Sherman Act, and state-law violations. The Village and Image Media moved for summary judgment. The district court granted the motion on the federal claims and relinquished supplemental jurisdiction over the state-law claims.

We affirm. Paramount lost its lease while the suit was pending. That mooted its claim for injunctive relief from the sign ban. The claim for damages is time-barred, except for the alleged equal-protection violation. That claim fails because Paramount was not similarly situated to Image Media. And the Village and Image Media are immune from Paramount's antitrust claims. We need not consider whether a market-participant exception to this immunity exists because Paramount failed to support its antitrust claims.

## I. Background

In 2005 Paramount contracted with Khushpal and Harmeet Sodhi to lease 1133–1135 Bellwood Avenue for the purpose of building a billboard. Paramount thought the property, which sits alongside the high-traffic I-290 corridor in Chicago, was an ideal location for its sign. In 2007 it applied for and received an Illinois Department of Transportation ("IDOT") permit authorizing construction of the sign on the Sodhi property.

But Paramount did not apply for the necessary local permit from the Village. This lapse would come back to haunt it. In 2009 the Village passed Ordinance 9-4, which mandated that "no new off-site advertising sign permit will be issued by the village." BELLWOOD, ILL., CODE § 156.207(E) (2009). As Bellwood officials confirmed in later meetings with Paramount, the ordinance prevented the Village from issuing a local permit for the Sodhi property.

In March 2012 the Village amended the ban to exempt "village owned or controlled property." *Id*. § 156.207(F) (2012). As luck would have it, the Village owned property at 1156 Bellwood Avenue, across the street from the Sodhi property. Seeing another opportunity to build its sign, Paramount offered to lease the property from the Village for $1,140,000 in increasing installments over 40 years. But Paramount wasn't alone. Image Media offered a lump sum of $800,000. In October 2012 the Village accepted Image Media's offer without responding to Paramount. Unaware of the Village's decision, Paramount made a lump-sum offer in January 2013. The Village again did not respond.

Paramount eventually learned of the Village's contract with Image Media. It wasn't happy. In May 2013 it sued the Village and Image Media, bringing six claims. Counts I and II alleged that the billboard ban violated the First Amendment and the Due Process Clause of the Fourteenth Amendment. Count III alleged that the lease agreement between Image Media and the Village violated the Equal Protection Clause. Count IV alleged that the ban violated § 2 of the Sherman Act. Count V alleged that the Village and Image Media violated § 1 of the Sherman Act through their lease agreement. Finally, Count VI requested a declaratory

judgment that the Village lacked authority under Illinois law to enter into the lease agreement with Image Media. Paramount sought damages for lost advertising revenue and an injunction to prevent the Village from enforcing the billboard ban and its lease agreement with Image Media.

Sometime after Paramount filed its complaint, a representative from Image Media met with Khushpal Sodhi to discuss his lease agreement with Paramount. In October 2013 the Sodhis told Paramount that they were cancelling the lease because Paramount failed to uphold its end of the bargain. They entered into a lease-option agreement with Image Media that same month. The Sodhis gave Image Media the right to lease their land for billboard construction in exchange for $30,000. Image Media also indemnified the Sodhis from any legal actions arising out of the agreement.

Paramount responded by adding Count VII to its complaint, which alleged that Image Media tortiously interfered with its lease agreement by contracting with the Sodhis. It also sued the Sodhis in state court seeking a declaratory judgment that its lease agreement was still enforceable. The Sodhis responded by sending a letter to the IDOT requesting that it void Paramount's state permit because they had cancelled the lease. The IDOT complied and voided Paramount's permit in March 2014. Paramount then amended its state-court complaint to add the IDOT as a defendant and request a declaratory judgment that the permit was still valid.

Back in federal court, the district judge entered summary judgment for the Village and Image Media. He held that Paramount lacked standing to bring its constitutional claims and alternatively that those claims failed on the merits. The

judge next rejected Paramount's antitrust claims, holding that the Village was immune and that Paramount had not provided evidence that Image Media engaged in anticompetitive behavior. Finally, he relinquished jurisdiction over Paramount's state-law claims. Paramount appealed.

## II. Discussion

We review a summary judgment de novo, viewing the record in the light most favorable to Paramount. *Kuttner v. Zaruba*, 819 F.3d 970, 975 (7th Cir. 2016). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### A. First Amendment and Due Process

Paramount first argues that the Village's ban on new billboard permits violates its First Amendment and substantive due-process rights. It seeks an order enjoining the Village from enforcing the ban and an award of damages for lost advertising revenue.

We take the claim for injunctive relief first. The Village and Image Media argue Paramount's standing evaporated when the Sodhi lease was cancelled. Because the cancellation arose after Paramount initiated this action, the issue is really one of mootness. A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation marks omitted).

After filing its complaint, Paramount lost its lease agreement and with it any property interest within the Village. So an injunction against the Village cannot help it. Regardless of

the Village's ordinances, Paramount cannot build a billboard on the Sodhi property.

Paramount forcefully contends that the Sodhis had no right to cancel the lease, but this argument is of no moment. If a breach occurred, Paramount would be almost certainly entitled to damages rather than a reinstatement of the lease. *See Koehler v. Packer Grp., Inc.*, 53 N.E.3d 218, 245 (Ill. App. Ct. 2016) ("Illinois courts have consistently held that money damages are the appropriate remedy for breach of contract.") (quotation marks omitted). The continued existence of the sign ban doesn't affect this remedy.

Likewise, Paramount's claim that Image Media induced the alleged breach is misplaced. Regardless of the propriety of an opposing party's actions, mootness is part of Article III's "irreducible constitutional minimum." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An "actual controversy must be extant at all stages of review." *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quotation marks omitted). Because Paramount lost its interest in the Sodhi property, its claim for injunctive relief is moot.

The damages claim faces a statute-of-limitations problem. The parties largely agree that these claims borrow Illinois's two-year limit for personal-injury actions.[1] *See Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Their dispute hinges on when Paramount's claims accrued; federal law governs that question. *Id.* A claim accrues when "the constitutional violation is complete and the plaintiff has a present

---

[1] Paramount briefly asserts that facial First Amendment challenges can never be time barred. Its argument is underdeveloped and bereft of any analysis. We do not address this theory.

cause of action." *Id.* In other words, a "cause of action accrues, and the statute of limitation commences to run, when the wrongful act or omission results in damages." *Id.* (quotation marks omitted).

Paramount's claims are untimely under this general accrual rule. When the Village adopted the sign ban in February 2009, the claimed constitutional tort was complete. Paramount, which had a lease and IDOT permit, could not build its sign. And yet it waited until May 2013 to sue, well beyond Illinois's two-year statute of limitations.

Paramount cannot save its claims by bootstrapping them to the 2012 amendment. The amendment did not, as Paramount argues, repeal and reenact the ban. By its own terms, the amendment created an exemption only for village-owned property. It had nothing to do with Paramount's injury. Paramount's First Amendment and due-process claims accrued in 2009, so they are untimely.

### B. Equal Protection

Paramount's equal-protection claim stands on different ground from its other constitutional claims. This claim challenges the Village's decision to lease its property to Image Media. Because this lease agreement occurred within two years of its lawsuit and Paramount still has an interest in damages, this claim does not suffer from the same procedural infirmities as the First Amendment and due-process challenges.

Paramount raises a "class-of-one" equal-protection claim. The core idea behind a class-of-one claim is that the equal-protection guarantee "protect[s] individuals against purely arbitrary government classifications, even when a classifica-

tion consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To prevail, Paramount must establish that (1) it was "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Id.* (quotation marks omitted).

The first question—and the only one we reach—is whether Paramount and Image Media were similarly situated. To meet this requirement, they must be "*prima facie* identical in all relevant respects." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (quotation marks omitted). Here, at least one major difference separates Paramount and Image Media: their offers to the Village. Paramount offered $1,140,000 in increasing installments over 40 years while Image Media offered a lump sum of $800,000. No reasonable jury could look at these offers and conclude that the two companies were similarly situated. No further analysis is needed. *See Monarch Beverage Co. v. Cook*, 861 F.3d 678, 682 (7th Cir. 2017).

**C. The Sherman Act**

Paramount raises two antitrust claims. It first asserts that the Village and Image Media violated § 1 of the Sherman Act by forming an unlawful conspiracy in restraint of trade. Next, it contends that the Village monopolized the market for billboards within its borders, violating § 2 of the Act.

We note as a threshold matter that under *Parker v. Brown*, 317 U.S. 341 (1943), the Village enjoys antitrust immunity. Municipalities receive immunity from federal antitrust laws if they "demonstrate that their anticompetitive activities

were authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985) (quotation marks omitted). Illinois municipalities can displace competition with activity that is "expressly or by necessary implication authorized by Illinois law" or "within traditional areas of local governmental activity." 50 ILL. COMP. STAT. 35/1(a) (2014).

The Illinois Supreme Court has held that billboard regulation is a traditional area of local governmental activity for home-rule municipalities like the Village. *Scadron v. City of Des Plaines*, 606 N.E.2d 1154, 1159, 1164–65 (Ill. 1992). And state law allows municipalities to lease property. 65 ILL. COMP. STAT. 5/11-76-1 (2005). Illinois has thus immunized the Village from Paramount's antitrust claims. And Paramount cannot hold Image Media liable by alleging that it conspired with a *Parker*-protected entity. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 382–83 (1991).

Paramount's sole challenge to the Village's *Parker* immunity rests on the so-called market-participant exception. The Supreme Court has observed that a "possible" exception to *Parker* immunity might exist when municipalities act as market participants. *Id.* at 379. We haven't addressed whether this exemption exists, and we don't need to here. Paramount has failed to bring proper § 1 or § 2 claims.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. While a narrow class of restraints are per se unreasonable, most fall under the "rule of reason." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283–84 (2018). To prevail under the rule of reason in a

§ 1 case, Paramount must establish "(1) a contract, combination or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Deppe v. NCAA*, 893 F.3d 498, 501 (7th Cir. 2018) (quotation marks and alterations omitted).

Paramount doesn't offer proof of either anticompetitive effects or a conspiracy to restrain trade between Image Media and the Village. It instead complains that the Village and Image Media's conduct harmed it individually. This allegation is insufficient to support a § 1 claim. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (holding that a successful § 1 claim "must allege and prove harm, not just to a single competitor, but to the competitive process").

Paramount's § 2 claim fails for similar reasons. Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, … any part of the trade or commerce." 15 U.S.C. § 2. Paramount appears to raise an actual monopoly claim, which requires that it establish "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000) (quotation marks omitted).

Paramount has not offered sufficient evidence to support its § 2 claim. We start and end with the first element. A plaintiff can establish that the defendant has monopoly power in a relevant market either by providing "direct evidence of anticompetitive effects" or "proving relevant product and geographic markets and … showing that the defendant's share exceeds whatever threshold is important

for the practice in the case." *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 937 (7th Cir. 2000). Paramount attempts to prove its claim through the second approach. Both sides agree that the Village is the only entity able to lease billboards within its boundaries, so the question turns on defining the relevant market.

Paramount asserts that the relevant market is billboard construction within the Village's municipal limits. It claims that this geographic boundary is "self-evident" because the ordinance eliminated competition in the village. This skeletal reasoning isn't enough. "[A] market is defined to aid in identifying any ability to raise price by curtailing output." *Isr. Travel Advisory Serv., Inc. v. Isr. Identity Tours, Inc.*, 61 F.3d 1250, 1252 (7th Cir. 1995). Municipal boundaries cannot define the relevant market without "evidence to prove that there are any legal or economic barriers to competition from areas immediately adjacent" to them. *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 296 (7th Cir. 1974). Paramount offers no evidence that the Village could raise prices for billboard leases in spite of competition from landowners in neighboring Chicago suburbs. Its failure to do so defeats its claim.[2]

AFFIRMED

---

[2] Because none of Paramount's federal claims remain, the judge did not abuse his discretion by relinquishing jurisdiction over the state-law claims. *See Bianchi v. McQueen*, 818 F.3d 309, 323 n.7 (7th Cir. 2016).