In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18–3134

CHICAGO STUDIO RENTAL, INCORPORATED, CHICAGO STUDIO
CITY REAL ESTATE HOLDINGS, LLC,

*Plaintiffs-Appellants*,

*v.*

ILLINOIS DEPARTMENT OF COMMERCE AND ECONOMIC
OPPORTUNITY, ILLINOIS FILM OFFICE, BETSY STEINBERG, in both
her official and individual capacity,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-CV-04099 — **Sara L. Ellis**, *Judge*.

———————————

ARGUED SEPTEMBER 4, 2019 — DECIDED OCTOBER 16, 2019

———————————

Before ROVNER, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. For nearly 30 years, Chicago Studio
Rental, Incorporated and Chicago Studio City Real Estate
Holdings, LLC (collectively, "Chicago Studio") operated the
only film studio in Chicago, Illinois. That changed around
2010 when Chicago Film Studio Holdings, LLC and Chicago

Film Studio Industrial Real Estate Holdings, LLC (collectively, "Cinespace") opened a new studio. Within a handful of years, Cinespace rapidly expanded its studio to include 26 more stages and 24 times more floor space than Chicago Studio's facility. Chicago Studio could not keep up, failed to attract production business, and ultimately stopped making a profit.

Chicago Studio sought to blame others for its demise and filed this action against the Illinois Department of Commerce and Economic Opportunity, Illinois Film Office, and Betsy Steinberg—three Illinois state actors responsible for promoting the Illinois film industry. Chicago Studio alleged that Defendants unlawfully steered state incentives and business to Cinespace in violation of the Sherman Act and equal protection and due process under the Fourteenth Amendment. The district court granted Defendants' motion to dismiss the Sherman Act and due process claims. It later granted summary judgment on the equal protection claim. Chicago Studio now appeals these decisions on the Sherman Act and equal protection claims.

We affirm. The district court properly dismissed the Sherman Act claim because Chicago Studio failed to adequately plead an antitrust injury. The complaint merely alleges injuries to Chicago Studio, not to competition. We also conclude that the district court properly granted summary judgment on the equal protection claim. Chicago Studio and Cinespace are not similarly situated, and there was a rational basis for Steinberg's conduct. We further find that the district court did not abuse its discretion in striking Chicago Studio's additional statement of facts for noncompliance.

## I. Background

Since 1979, Chicago Studio has operated a film and television production studio in Chicago, Illinois. Chicago Studio has four studio stages measuring 62,000 square feet. It requires production companies to lease its production equipment for a .4% charge. The studio does not have installed air conditioning, but Chicago Studio can provide industry standard portable air conditioning units for an additional charge. It does not have scene docks, which would allow large trailers to unload equipment inside the studio. During the relevant time period, Chicago Studio could accommodate one large or two average projects at a given time.

Cinespace began operating a studio in Chicago around 2010. Cinespace is not a party to this action, but it is Chicago Studio's only competitor in the Chicago area. By the end of 2012, Cinespace had 600,000 square feet of floor space and 10 stages. The studio expanded to 1.5 million square feet of floor space and 30 stages by January 2015. Cinespace's studio can accommodate two-story sets and includes air conditioning, inside breezeways and scene docks, concrete floors, soundproof walls, and new offices. Cinespace permits production companies to use any equipment rentals they choose including an unaffiliated equipment rental company called Cinelease that charges .2%.

All three Defendants are Illinois state actors. The Illinois Department of Commerce and Economic Opportunity ("IDCEO") is a division of Illinois government tasked with promoting Illinois's profile as a leading business destination. To promote the Illinois film industry, IDCEO administers grant programs to film studios and tax credits to film producers. *See* 35 ILCS 16/10; Ill. Admin. Code tit. 14, § 528.70 (2013).

The Illinois Film Office ("IFO") is part of IDCEO, and Betsy Steinberg served as the IFO Managing Director during Governor Patrick Quinn's administration. The IFO's principal purpose is to support the Illinois film industry. *See* 35 ILCS 16/5 ("Illinois must move aggressively with new business development investment tools so that Illinois is more competitive in site location decision-making for film productions.…It is the purpose of this Act to preserve and expand the existing human infrastructure for the motion picture industry in Illinois.")

Chicago Studio claims that IDCEO, IFO, and Steinberg conspired with Cinespace to boycott Chicago Studio and to steer business towards Cinespace. They did so by administering 30% film tax credits to producers and issuing five state grants totaling $27.3 million to Cinespace. Due to a change in administration, Cinespace returned $10 million to Illinois. Chicago Studio also alleges that Defendants failed to mention Chicago Studio to producers, encouraged producers to use Cinespace, excluded Chicago Studio from business meetings, and did not allow Chicago Studio to bid on production opportunities. Chicago Studio states that it applied for two grants, but it did not receive either.

Cinespace consistently reached out to Steinberg and IFO for assistance with marketing and procuring film and television production business. It also hired a lobbyist to apply for grant money from the State of Illinois. Steinberg provided help to Chicago Studio whenever it asked, but it rarely did. Chicago Studio did not ask Steinberg to contact Hollywood film producers on its behalf because it had done business with them for years. Chicago Studio does not identify a single

instance where it reached out to Steinberg for help, and Steinberg refused.

The Illinois film industry became more profitable over the relevant time period. In 2009, the Illinois film industry earned approximately $104 million in gross revenue. In 2012 and 2013, it made approximately $184 million and $350 million in gross revenue, respectively. The industry also created new jobs, approximately 7,082 in 2009 to 15,627 in 2013.

By steering business towards Cinespace, Chicago Studio asserts that IDCEO, IFO, and Steinberg became active market participants in the "Chicago Film Production Market," which it defines as entities providing production facilities in Chicago. Defendants' conduct resulted in the following alleged injuries: (1) a decrease in Chicago Studio's market share from 100% to 10%, (2) Chicago Studio's inability to compete in the market, (3) a reduction in competition, and (4) an increase in transactional costs to produce film and television in Chicago to consumers of those services.

Chicago Studio filed suit asserting violations of equal protection under the Fourteenth Amendment against Steinberg in her individual capacity (Count I), Sections 1 and 2 of the Sherman Act against IDCEO and Steinberg in her official capacity (Count II), and due process under the Fourteenth Amendment against Steinberg in her individual capacity (Count III). Defendants moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), which the district court granted in part. Chicago Studio subsequently filed an amended complaint and added IFO as a defendant. Defendants again moved to dismiss the Sherman Act and due process claims for failure to state a claim. The district court granted the motion. Steinberg later moved for summary

judgment on the equal protection claim. The district court granted Steinberg's motion for summary judgment and struck Chicago Studio's statement of additional facts for non-compliance. Chicago Studio now appeals both the district court's dismissal of the Sherman Act claim and the summary judgment ruling.

## II. Discussion

### A. The Sherman Act

We review the district court's motion to dismiss ruling de novo, assume all well-pleaded allegations are true, and construe reasonable inferences in plaintiff's favor. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 389 (7th Cir. 2018). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The district court dismissed Chicago Studio's antitrust claim with prejudice. In doing so, it relied upon *Czajkowski v. Illinois*, 460 F. Supp. 1265 (N.D. Ill. 1977) and held that IDCEO, IFO, and Steinberg in their official capacities are immune from antitrust liability under the Eleventh Amendment. It also found that Chicago Studio had failed to allege an antitrust injury.

The Supreme Court has held that the Sherman Act does not prohibit anticompetitive state action. *Parker v. Brown*, 317 U.S. 341, 350–51 (1943) ("The Sherman Act…gives no hint that it was intended to restrain state action or official action

directed by a state."). Since then, the Supreme Court has devised three types of antitrust immunity: (1) ipso facto immunity, (2) *Hallie* immunity, and (3) *Midcal* immunity. *See N.C. State Bd. of Dental Exam'rs v. FTC,* 135 S.Ct. 1101, 1110–13 (2015); *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38–40, 42 (1985); *Hoover v. Ronwin,* 466 U.S. 558, 567–69 (1984); *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105 (1980); *see also Paramount Media Grp., Inc. v. Village of Bellwood,* 929 F.3d 914, 921 (7th Cir. 2019); *Lawline v. Am. Bar Ass'n,* 956 F.2d 1378, 1384 (7th Cir. 1992); *Fuchs v. Rural Elec. Convenience Coop. Inc.,* 858 F.2d 1210, 1213 (7th Cir. 1988).

The parties disagree on which immunity test applies here. Chicago Studio argues that Defendants are not subject to antitrust immunity because the *Midcal* test applies, and Defendants do not satisfy the test. Defendants argue that they are subject to either ipso facto immunity or *Hallie* immunity. We do not need to decide whether Defendants are subject to antitrust immunity because we find that Chicago Studio failed to allege an antitrust injury.[1] *See, e.g., Paramount Media Grp., Inc.,* 929 F.3d at 921.

The complaint asserts that Defendants violated Sections 1 and 2 of the Sherman Act. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Chicago Studio alleges that IDCEO, IFO, and Steinberg violated Section 1 by steering tax credits to producers using Cinespace's studio and state grants to Cinespace

---

[1] Although we do not decide which immunity test should apply here, both parties acknowledge that the test outlined in *Czajkowski v. Illinois,* 460 F. Supp. 1265 (N.D. Ill. 1977) is the wrong standard. We agree.

and boycotting Chicago Studio in restraint of trade. Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States…." 15 U.S.C. § 2. Chicago Studio claims that Defendants and Cinespace conspired to monopolize and have attempted to monopolize the market for operating film studios in Chicago violating Section 2.

To state an antitrust injury, a plaintiff must allege an anticompetitive injury that flows from defendant's actions and that the antitrust laws were intended to prevent. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977); *see also, e.g., Serfecz v. Jewel Food Stores,* 67 F.3d 591, 597 (7th Cir. 1995). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344 (1990). Plaintiff must assert an injury not only to itself, but to the relevant market. *See Agnew v. Nat'l Collegiate Athletic Ass'n,* 683 F.3d 328, 334–35 (7th Cir. 2012). The alleged injury must either reduce output or raise prices to consumers. *James Cape & Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 399 (7th Cir. 2006); *see also McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.,* 937 F.3d 1056, 1065 (7th Cir. 2019) ("We usually presume that competitors and consumers in the relevant market are the only parties who suffer antitrust injuries and are in a position to efficiently vindicate the antitrust laws."). "The antitrust-injury doctrine was created to filter out complaints by competitors and others who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage." *United States Gypsum Co. v. Indiana Gas. Co., Inc.,* 350 F.3d 623, 627 (7th Cir. 2003).

At best, Chicago Studio has pleaded an injury to itself, not an anticompetitive injury to the market. The complaint alleges the following injuries: (1) decrease in Chicago Studio's share of the film production market, (2) Chicago Studio's inability to compete in the market, (3) a reduction in competition, and (4) an increase in transactional costs to produce films in Chicago to other consumers of those services. Two of the alleged injuries—decrease in its share of the film production market and inability to compete—are harms to Chicago Studio and are not proper antitrust injuries. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135, 139 (1998) (concluding that plaintiff "must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.,* to competition itself"). A reduction in competition and an increase in transactional costs could be anticompetitive injuries, but Chicago Studio fails to plausibly allege either. Although Chicago Studio generally claims, in a conclusory manner, that competition decreased, the thrust of its complaint points the opposite way. Before 2009, Chicago Studio was the only film studio in the Chicago area. Cinespace came into the market, brought new capacity, and the Illinois film industry grew. The number of film studios in Chicago increased from one to two, and the Illinois film industry generated about $184 million and $350 million in revenue in 2012 and 2013, respectively. Chicago Studio continued to operate in the market and does not allege that it was excluded from doing so. Chicago Studio also provides no facts to support its one-sentence, conclusory statement that transactional costs increased. The complaint does not allege what transactional costs increased, how much they increased by, and who experienced the increased costs. Nor does the complaint allege reduced output or higher prices in the Chicago film market. In summary, Chicago Studio merely

states these assertions in a conclusory fashion and fails to allege factual allegations supporting the existence of an antitrust injury. We will not accept such allegations as true. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Chicago Studio argues that its exclusion from the market is a valid antitrust injury and cites *Gulf States Reorganization Group, Inc. v. Nucor Corporation*, 466 F.3d 961 (11th Cir. 2006) and *OverEnd Technologies, LLC v. Invista S.ÀR.L.*, 431 F. Supp. 2d 925 (E.D. Wis. 2006). Chicago Studio, however, does not allege that it was entirely excluded from the market. "Transfer of business from one company to another, however, without an accompanying effect on competition, cannot be an antitrust violation" because antitrust laws protect competition, not competitors. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1031–32 (7th Cir. 2006). Moreover, these cases are distinguishable because they involved exclusion of a potential competitor. *See Gulf States Reorganization Grp., Inc.*, 466 F.3d at 967–68; *OverEnd Techs., LLC*, 431 F. Supp. 2d at 930. Chicago Studio is not a potential competitor; it has operated a film studio in Chicago since 1979 and continued to do so after Cinespace entered the market. *See Tri-Gen Inc.*, 433 F.3d at 1032.

Chicago Studio's Section 2 claim also fails for an additional reason. The complaint does not plausibly allege that Defendants conspired to monopolize or have attempted to monopolize the market for operating film studios in Chicago. Chicago Studio admitted that IDCEO, IFO, and Steinberg are not competitors of Chicago Studio. Instead Chicago Studio argues that they are market participants. This is implausible.

Defendants do not provide studio space and do not compete in the market. The complaint also does not allege any facts regarding their market power or anticompetitive use of their power. *See Endsley v. City of Chicago,* 230 F.3d 276, 282–84 (7th Cir. 2000).

Because we find that Chicago Studio failed to plead an antitrust injury, we do not address Defendants' additional bases for dismissing the antitrust claim.

**B. Equal Protection**

We review the district court's summary judgment ruling de novo and in the light most favorable to Chicago Studio. *Peerless Network, Inc. v. MCI Commc'n Serv., Inc.*, 917 F.3d 538, 545 (7th Cir. 2019). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Chicago Studio raises a "class-of-one" equal protection claim against Steinberg in her individual capacity. This claim is based on the principle that similarly situated people must be treated alike unless there is a rational basis for treating them differently. *See LaBella Winnetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 941 (7th Cir. 2010). To succeed, Chicago Studio must prove that (1) it has been "intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment." *Paramount Media Grp., Inc.*, 929 F.3d at 920 (citation omitted). We have yet to determine whether a plaintiff must also prove bad motive. *See Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 913 (7th Cir. 2012) (Wood, J., dissenting). But we need not do so here

because Chicago Studio cannot survive summary judgment on the other elements of its equal protection claim.

To be similarly situated, competitors must be "identical or directly comparable" "in all material aspects." *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) (quoting *LaBella Winnetka, Inc.*, 628 F.3d at 942). Chicago Studio must show that it was treated differently than another entity that is "'*prima facie* identical in all relevant respects.'" *Paramount Media Grp., Inc.*, 929 F.3d at 920 (citing *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015)).

Here, Chicago Studio and Cinespace were not similarly situated because the undisputed facts demonstrate that they differed in material ways. Chicago Studio has four stages measuring 62,000 square feet, whereas Cinespace has 30 stages and 1.5 million square feet of floor space. Cinespace could also accommodate two-story sets. Chicago Studio does not have scene docks or installed air conditioning (only portable air conditioning units for an additional charge) while Cinespace has both. Chicago Studio charges .4% for equipment rentals and requires production companies to use its equipment rentals. Cinespace permits production companies to use any equipment rental company including Cinelease, which charges .2%. Based on these facts, no rational fact finder would consider these studios to be similarly situated.

The equal protection claim also fails because there are rational bases for Steinberg's conduct. "If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn, LLC v. Indiana Dep't of Fin. Insts.*, 755 F.3d 839, 845 & n.2 (7th Cir. 2014). We just need to identify a conceivable rational basis for the different treatment; it does not need to be the actual basis for

defendant's actions. *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). There are several rational bases for Steinberg's conduct. First, it was rational for Steinberg to offer more assistance to the studio that requested help. Cinespace consistently reached out to Steinberg for marketing support, and Chicago Studio rarely did. It cannot now complain that its failure to do so amounts to a constitutional injury. Second, it was rational for Steinberg to promote the studios based on production needs. Fox Studios, for example, decided to film Empire at Cinespace and occupied 250,000 square feet and up to six stages. Lionsgate considered filming Divergent in Chicago and requested 200,000 square feet of production space. It would have been rational for Steinberg to promote Cinespace over Chicago Studio for these projects because Chicago Studio simply did not have enough studio space to accommodate these productions and Cinespace did. We find that the district court properly granted summary judgment on the equal protection claim.

## C. Summary Judgment Practice

During summary judgment briefing, the parties filed a joint statement of undisputed facts pursuant to Judge Ellis's case management procedure. Chicago Studio subsequently filed a statement of additional facts, which it claimed contained disputed facts. The district court found that Chicago Studio's additional facts were undisputed facts and a blatant attempt to get around the court's order permitting 50 additional facts. It therefore struck Chicago Studio's statement of additional facts and granted Steinberg's motion for summary judgment.

On appeal, Chicago Studio argues that the district court's summary judgment practice is overly burdensome and

violates Federal Rules of Civil Procedure 56 and 83 and Local Rule 56.1 by allowing the court to determine material issues of fact and disallowing a party to dispute an undisputed fact. We disagree.

As a threshold matter, Chicago Studio forfeited this argument by failing to challenge the summary judgment practice at the district court. *See Scheidler v. Indiana*, 914 F.3d 535, 540, 544 (7th Cir. 2019) ("A party generally forfeits issues and arguments raised for the first time on appeal."). Instead, Chicago Studio and Defendants filed joint motions in compliance with the district court's practice. If Chicago Studio objected to the district court's practice, it should have made a record of its objections at the district court and given the district court the opportunity to address the concern.[2] It did not. We cannot consider this argument for the first time on appeal.

Even if it was not forfeited (or waived), Chicago Studio's challenge nonetheless fails. We review the district court's decision on compliance with local rules for an abuse of discretion. *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 640 (7th Cir. 2008). The relevant portion of Judge Ellis's summary judgment practice states:

> Parties are required to file a **joint statement of undisputed material facts** that the parties agree are not in dispute…**The parties may not file –**

---

[2] Although not argued by the parties, Chicago Studio likely waived this argument as well. *See, e.g., CNH Indus. Am. LLC v. Jones Lang LaSalle Americas, Inc.*, 882 F.3d 692, 705 (7th Cir. 2018). At a hearing, Chicago Studio's counsel stated that the summary judgment practice was "overly burdensome." But later, during the same hearing, Chicago Studio's counsel agreed to abide by the summary judgment practice.

**and the Court will not consider – separate statements of undisputed facts.** However, the non-moving party may include facts in its response to the motion for summary judgment that it contends are disputed in order to demonstrate that a genuine issue of material fact exists that warrants denying the motion for summary judgment. The non-moving party must include citations to supporting material supporting the dispute and attach the same. The moving party may respond to these facts in its reply.

The parties shall not file more than 120 statements of undisputed material facts without prior leave of the Court….

If the parties cannot agree whether proposed statements of fact are not in dispute, they may file a joint motion prior to filing the motion for summary judgment so the Court can determine whether there is a basis for the alleged disputes. That motion should set forth the proposed statements of fact at issue, with supporting material. Each statement should be followed by a response by the other party explaining why that party contends that the statement is actually in dispute, with citation to supporting material…The Court will then determine whether the proposed statements of fact may be included in the joint statement as undisputed facts. Parties should provide the Court with sufficient time to rule on factual disputes before summary judgment motions are due.…

> If the nonmoving party wholly refuses to join in the joint statement of undisputed material facts, the moving party will nevertheless be permitted to file the motion for summary judgment, accompanied by a separate declaration of counsel explaining why a joint statement of undisputed material facts was not filed.

Judge Sara L. Ellis, Case Management Procedures, *available at* https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurK-KJRDT+FUM5tZmA== (last visited Oct. 16, 2019) (emphasis in original).

We have previously held that Judge Ellis's summary judgment practice does not violate Local Rule 56.1. *See Sweatt v. Union Pac. R.R. Co.,* 796 F.3d 701, 711–12 (7th Cir. 2015). The summary judgment practice at issue in *Sweatt* is materially similar to the one at issue here. It merely requires parties to file a joint statement of undisputed facts, if possible. The non-moving party may include disputed facts in its response brief, and the moving party may respond to these disputed facts in its reply brief. That is consistent with Federal Rule of Civil Procedure 56(a), which requires parties to support their assertion that a fact "cannot be or is genuinely disputed." Nor is it in conflict with Local Rule 56.1, which directs a moving party to file a statement of material facts and a non-moving party to respond to the movant's statement of material facts. N.D. Ill. L.R. 56.1(a), (b)(3)(c); *See Sweatt,* 796 F.3d at 711 ("The laudable goal of this [case management procedure] is to remove the chaff from the grain in a given case, thereby allowing the parties—and the court—to focus on the facts that are actually in dispute.") "A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§

2072 and 2075, and the district's local rules." Fed. R. Civ. P. 83(b).

Chicago Studio has not presented any reason why we should conclude otherwise here. We agree with the district court that Chicago Studio's statement is comprised of undisputed facts. The parties could have included these facts in their joint statement of undisputed facts. The joint statement included 91 undisputed facts, and the court's summary judgment practice permits up to 120 undisputed facts without leave of court. If the parties needed to present more than 120 undisputed facts, they should have requested leave to do so. They did not. We find that the district court did not abuse its discretion by striking Chicago Studio's statement of additional facts for noncompliance.

For these reasons, we AFFIRM the district court.