In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2372

ANTHONY JOHNSON,

*Plaintiff-Appellant,*

*v.*

EDWARD WINSTEAD, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 7177 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED SEPTEMBER 18, 2017 — DECIDED AUGUST 14, 2018

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* On December 5, 2003, Chicago Police Detectives James Las Cola and Edward Winstead questioned Anthony Johnson in separate interviews about his involvement in the shooting death of Brandon Baity two months earlier. Johnson admitted to each detective that he drove the shooter to and from the scene but claimed not to know anything about his plan to kill Baity. State prosecutors

charged Johnson for Baity's murder under an accountability theory. He was twice tried and convicted.

Johnson moved to suppress his statements based on non-compliance with *Miranda*. The trial judge denied the motion. The case proceeded to trial in October 2007, and Detectives Las Cola and Winstead testified about Johnson's statements. The jury found him guilty, but the Illinois Appellate Court reversed based on an instructional error and remanded for a new trial. At the second trial in March 2012, the detectives repeated their testimony about Johnson's statements. Once again Johnson was convicted, but the appellate court again reversed, this time based on insufficient evidence to support accountability liability.

In August 2015 Johnson sued Detectives Las Cola and Winstead for damages under 42 U.S.C. § 1983 alleging that they violated his Fifth Amendment right against self-incrimination by interrogating him without *Miranda* warnings and giving testimony about his unwarned statements at trial. The detectives moved to dismiss, arguing that the claims were untimely because Johnson filed suit more than two years after his statements were introduced at trial and accrual was not deferred under *Heck v. Humphrey*, 512 U.S. 477 (1994). The district judge agreed and dismissed the claims.

We reverse in part. *Heck* blocks a § 1983 claim that necessarily implies the invalidity of a criminal conviction unless the plaintiff can show that the conviction has already been invalidated. As a corollary to that rule, if a claim is *Heck*-barred, accrual is deferred until the conviction is overturned. An officer's failure to give *Miranda* warnings is not itself a constitutional violation; rather, a Fifth Amendment violation

occurs when an accused's unlawfully obtained confession is introduced as evidence to convict him in a criminal case. Johnson seeks damages arising from the admission of his (allegedly) unwarned statements at trial, resulting in two wrongful convictions. Claims of this kind necessarily imply the invalidity of the convictions, so *Heck*'s rule of deferred accrual applies.

Even so, to the extent Johnson seeks damages stemming from the first conviction, the claims are time-barred. That conviction was reversed in 2010, starting the two-year limitations clock. So the suit is untimely as to those claims. But the claims for alleged Fifth Amendment violations in the second trial are timely. That conviction was reversed in 2014, and Johnson sued less than a year later.

## I. Background

Johnson's criminal case has a lengthy factual and procedural history. We limit our account to the portions of the story that are necessary to understand his § 1983 claims against these two detectives. We take the background from the operative complaint and the state appellate court's two opinions in the criminal case.

Early in the morning on October 1, 2003, Brandon Baity was sitting in a car parked near the intersection of Emerald Avenue and 69th Street on the south side of Chicago when a gray Pontiac drove by and stopped in the middle of the street. A man emerged from the backseat, approached Baity's car, drew a gun, and opened fire. Baity was struck multiple times and died.

Police launched an investigation that eventually led them to Johnson. On December 4, 2003, Detective Robert Garza

called Johnson and said that he'd heard he had some information about Baity's murder. *People v. Johnson*, 23 N.E.3d 1216, 1232 (Ill. App. Ct. 2014) (second appeal). Johnson promised to call the detective back to discuss what he knew. That evening before the promised return call, Detective Garza spotted Johnson on the street and asked if he would accompany him to the police station to talk about the case. Johnson agreed and went with Garza to the station, but the detective didn't question him right away. *Id.* In the early morning hours of December 5, Detective Las Cola interviewed Johnson about the Baity murder. Johnson acknowledged that he drove the shooter to and from the scene and described the shooting in some detail. *Id.* at 1233. Other detectives questioned Johnson in separate interviews after daybreak. Detective Winstead did so that afternoon; he testified without contradiction—at the suppression hearing and both trials—that he gave Johnson *Miranda* warnings and that Johnson said he understood them. *Id.* at 1234.

Johnson told Detectives Las Cola and Winstead more or less the same story. On the night of the murder, he was driving around Chicago in a Pontiac Grand Am owned by a friend. Johnson had two passengers in the car that night: Clayton Sims and Nolan Swain. While they were driving around, Sims recognized the driver of a cream-colored car heading in the opposite direction. Sims told Johnson to do a U-turn and follow the car so he could "holler at that guy." *Id.* Johnson followed Sims's instructions, and they tailed the car to Emerald and 69th, where it finally stopped. At Sims's direction Johnson pulled alongside and then parked the Pontiac slightly ahead of the other car, blocking its escape. *Id.* at 1233.

Sims got out, approached the other vehicle, drew a gun, and shot the driver multiple times. Johnson pulled forward and yelled to Sims, "Come on or I'm going to leave you." *Id.* at 1234. Sims sprinted to the Pontiac and jumped in, and they sped off. Johnson told both detectives that he had no idea Sims was planning to shoot the driver of the other car. He denied even knowing that Sims was armed. No charges were issued at that time, and Johnson was released.

Several months later Chicago police arrested Swain and the owner of the Pontiac on unrelated drug charges, and the two men signed statements implicating Johnson in Baity's murder. Johnson claims the police coerced them to make and sign these statements. On June 1, 2004, Johnson was arrested for Baity's murder (he was already in custody on an unrelated murder charge), and a grand jury thereafter indicted both Sims and Johnson for the crime.

Johnson moved to suppress his statements to the detectives. After a suppression hearing on March 13, 2007, the trial judge denied the motion, ruling that Johnson was not in custody when he spoke to Detective Las Cola and that the other detectives (Winstead included) complied with *Miranda* and used no coercive interrogation tactics. Sims then moved to sever his case from Johnson's. The judge granted the motion, and the cases were tried separately—Johnson's on a theory that he was accountable for Sims's actions.

Johnson's case was tried twice, first in October 2007 and again in March 2012. During the first trial, the prosecution called Detectives Las Cola and Winstead to the witness stand on October 5 and elicited testimony about the statements Johnson made to them four years earlier. Generally speaking, they testified that Johnson admitted that he tailed Baity's

car at Sims's direction, parked next to Baity's car in a position that blocked his escape, called Sims back to the car after the shooting, and drove away from the scene with Sims in the car. The detectives also testified that Johnson disclaimed any knowledge of Sims's plan to shoot Baity. (There was more to the prosecution's case, of course, but it's not necessary to canvass the evidence here.)

The defense called no witnesses and Johnson did not testify. The jury found him guilty. Johnson appealed, and the Illinois Appellate Court vacated the conviction and remanded for a new trial based on the judge's failure to clarify the law in response to a question from the jury. *People v. Johnson*, No. 1–08–0233, 1 N.E.3d 119 (Ill. App. Ct. 2010) (unpublished order). In this first appeal, Johnson did not contest the suppression ruling or otherwise challenge the admission of his statements at trial.

The case was retried in March 2012. On March 21 Detectives Las Cola and Winstead again took the stand and testified to Johnson's statements. This time Johnson called Sims as a defense witness; he had been acquitted in his own trial and thus faced no jeopardy. Sims denied that Johnson drove him away from the murder scene and claimed that Johnson had no idea that he was going to kill Baity. The jury found Johnson guilty.

On December 31, 2013, the Illinois Appellate Court reversed the conviction based on insufficient evidence of accountability, relying on *People v. Phillips*, 972 N.E.2d 724 (Ill. App. Ct. 2012), *overruled by People v. Fernandez*, 6 N.E.3d 145 (Ill. 2014). *People v. Johnson*, 3 N.E.3d 477 (Ill. App. Ct. 2013). The State sought review in the Illinois Supreme Court, which directed the appellate court to reconsider its decision

in light of intervening caselaw. *People v. Johnson*, 22 N.E.3d 1162 (mem.) (Ill. 2014). On reconsideration the appellate court adhered to its original decision and reversed the conviction, issuing its decision on December 31, 2014. *People v. Johnson*, 23 N.E.3d at 1218. In this second round of appellate proceedings, Johnson again raised no challenge to the admission of his statements at trial.

On August 15, 2015—less than a year after the second conviction was reversed but more than two years after his second trial—Johnson filed a sprawling civil-rights suit under § 1983 naming the prosecutors, multiple Chicago police officers, and the City of Chicago as defendants. He asserted 30 federal and state claims, but this appeal is limited to two. As relevant here, Johnson alleged that Detectives Las Cola and Winstead violated his Fifth Amendment right against self-incrimination by interrogating him without *Miranda* warnings and testifying about his unwarned statements at both trials, each time resulting in a conviction.

The detectives moved to dismiss for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). They argued that the claims were time-barred because the alleged Fifth Amendment violations accrued when Johnson's statements were introduced at trial in October 2007 and March 2012, and accrual was not deferred under *Heck*. The judge agreed and dismissed the claims as untimely.

## II. Discussion

We review a Rule 12(b)(6) dismissal de novo. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). Johnson argues that his Fifth Amendment claims were not untimely

because accrual was deferred under *Heck* until after his conviction was overturned a second time in 2014.

Civil-rights claims under § 1983 borrow the state-law limitations period for analogous torts, but federal law governs accrual questions. *Wallace v. Kato*, 549 U.S. 384, 387–88 (2007). For § 1983 claims in Illinois, the limitations period is two years. *See Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016) (citing 735 ILL. COMP. STAT. 5/13-202). The Supreme Court has held that a § 1983 claim accrues when the constitutional violation is complete and the plaintiff has a present cause of action—"that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (quotation marks omitted). This mirrors the traditional common-law rule that a "tort cause of action accrues, and the statute of limitation commences to run, when the wrongful act or omission results in damages." *Id.* at 391 (quotation marks omitted).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. *Miranda* warnings and the corollary exclusionary rule are "prophylactic measure[s] to prevent violations of the right protected by the text of the Self-Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). Accordingly, an officer's failure to provide *Miranda* warnings prior to an interrogation is not itself a Fifth Amendment violation and "cannot be grounds for a § 1983 action." *Id.* Rather, a self-incrimination violation occurs (if at all) when a suspect's unlawfully obtained inculpatory statement is used against him in a criminal case. *Id.* at 767. It follows that a claim for violation of the Fifth Amendment

right against compulsory self-incrimination is complete and accrues when an accused's unlawfully obtained inculpatory statement—whether coerced or obtained without *Miranda* warnings—is introduced as evidence at trial to convict him of a criminal offense. *Id.*; *see also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026–27 (7th Cir. 2006).

Under this general accrual rule, Johnson's claims came too late. The prosecution used his statements against him (through the testimony of the detectives) at his first trial in October 2007, resulting in conviction, and again at his second trial in March 2012, also resulting in conviction. The claimed constitutional torts were complete upon conviction—that is, the unconstitutional acts resulted in damages at that point—so the § 1983 claims accrued. Johnson filed suit on August 15, 2015, almost eight years after the first trial and more than three years after the second.

An exception exists, however, for certain claims barred by *Heck v. Humphrey*. *Heck* holds that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a convic-

tion or sentence that has *not* been so invalidat-
ed is not cognizable under § 1983.

512 U.S. at 486–87.

*Heck* arrived at this rule by analogizing a § 1983 claim for conviction-linked constitutional violations to the tort of malicious prosecution, one element of which "is [the] termination of the prior criminal proceeding in favor of the accused." *Id.* at 484. The Court also rested its holding on the "strong judicial policy" against "permit[ting] a collateral attack on [a] conviction through the vehicle of a civil suit." *Id.* (internal quotation marks omitted). The Court explained: "[T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it always applied to actions for malicious prosecution." *Id.* at 486.

Accordingly, when a § 1983 plaintiff seeks damages for a constitutional violation that led to his conviction and imprisonment, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. But "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

The Court gave the following example of the latter kind of claim:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, … and especially harmless error, *see Arizona v. Fulminante*, 499 U.S. 279, 307–308, 111 S. Ct. 1246, 1263–1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Id.* at n.7 (citation omitted). This footnote was decisive in an Eighth Circuit case involving the application of *Heck* to a Fifth Amendment self-incrimination claim much like this one. *See Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996). We disagree with our sister circuit's approach, as we explain later. For now it's enough to say that the footnote must be read in full, taking note of what the Court said immediately after the passage we quoted above: "In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck*, 512 U.S. at 487 n.7 (citation omitted).

Read as a whole, the point of footnote 7 comes into sharper focus. The Court was drawing a conceptual distinc-

tion between constitutional wrongs that occur and are complete *outside* a criminal proceeding (for example, unreasonable searches) and constitutional wrongs that occur *within* a criminal proceeding. Constitutional violations of the first type are independently actionable *regardless of their impact on a conviction*, which takes them outside the *Heck* rule—but with the important qualifier that the scope of recovery cannot include conviction-related injuries.[1] On the other hand, § 1983 claims for constitutional violations of the second type—i.e., those that occur at trial—fall within the *Heck* rule. We'll return to this point in a moment.

*Heck*'s rule of "deferred accrual" implements the *Heck* bar. The Court was alert to the problem of the limitations clock ticking down on a potential § 1983 claim while proceedings to overturn a conviction are ongoing. So *Heck* provides a deferred-accrual rule:

> Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Id.* at 489–90 (citations omitted).

---

[1] To be sure, *Heck* still bars a § 1983 plaintiff from recovering damages for constitutional wrongs that occur outside a criminal proceeding to the extent that a finding of liability "would render a conviction or sentence invalid." 512 U.S. at 486 & n.6 (commenting that *Heck* bars a civil challenge where "[i]n order to prevail in [a] § 1983 action, [plaintiff] would have to negate an element of the offense of which he has been convicted").

It should be clear from this discussion that *Heck* can be deployed both *defensively* and *offensively*; that tension has sometimes produced inconsistency in application. The *Heck* bar is normally raised defensively to win dismissal of a § 1983 claim when the plaintiff's conviction has not been overturned; if the bar applies, the plaintiff's claim must be dismissed as premature. In contrast, *Heck*'s rule of deferred accrual is raised *offensively* to overcome a statute-of-limitations defense. The Court's decision in *Wallace* was such a case.

*Wallace* concerned the accrual rule for a § 1983 claim alleging a Fourth Amendment violation for unlawful arrest. 549 U.S. at 387. The plaintiff was arrested without a warrant and later charged with murder and convicted. The conviction was reversed on appeal and the charges were dropped; at that point the plaintiff brought a § 1983 suit alleging (among other things) a Fourth Amendment violation stemming from his warrantless arrest. *Id.* at 386–87. The Court held that the claim accrued when the plaintiff was taken before a magistrate and bound over for trial. *Id.* at 392–93. After that point he was detained pursuant to legal process, so the alleged Fourth Amendment violation was complete and he was free to sue. The claim accrued, the limitations clock began to run, and the limitations period expired before he filed suit.

The plaintiff sought to overcome the limitations defense by invoking *Heck*'s rule of deferred accrual. He maintained that his Fourth Amendment claim "could not accrue until the State dropped its charges against him." *Id.* at 392. The Court rejected that argument, noting that a cause of action for violation of the right to be free from unreasonable seizure

is complete and present *before* any conviction ensues— indeed, it is an actionable constitutional wrong *independent of* any conviction that might later be obtained (with or without the fruits of the unlawful arrest). *Id.* at 393–94. The Court explained that accepting the plaintiff's position would require "the adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.* at 393. *Wallace* thus clarified that *Heck* delays the accrual of a § 1983 claim "until the setting aside *of an extant conviction* which success in that tort action would impugn." *Id.*

Relying heavily on *Wallace*, the detectives argue that *Heck*'s rule of deferred accrual categorically does not apply to a § 1983 claim for violation of the Fifth Amendment right against self-incrimination. When a confession is admitted at trial, there is no extant conviction (obviously), so the logic of *Wallace* requires the same result for Fifth Amendment claims. They argue in the alternative that a § 1983 claim for violation of the right against self-incrimination does not, as a categorical matter, *necessarily* imply the invalidity of the plaintiff's conviction because Fifth Amendment violations are subject to harmless-error analysis. *See Fulminante*, 499 U.S. at 307–08. This argument draws heavily on *Heck*'s footnote 7.

For his part, Johnson argues that *Wallace* is limited to Fourth Amendment claims and should not be extended to this context. He also resists the categorical approach proposed by the detectives. He argues instead that applying *Heck* to Fifth Amendment claims requires a fact-intensive, case-by-case inquiry. Under his preferred approach, a § 1983

claim alleging a Fifth Amendment violation impugns a conviction whenever the accused's inculpatory statement "figured prominently" in the prosecution's case as a factual matter. *Matz v. Klotka*, 769 F.3d 517, 531 (7th Cir. 2014). As Johnson sees it, his statements formed the cornerstone of the prosecution's case, so *Heck* postponed accrual until his second conviction was overturned.

Our cases since *Wallace* have sent mixed signals on the methodological question. Some take a categorical approach to *Heck* questions, either implicitly or explicitly. *See, e.g., Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014) (applying a categorical approach and drawing a distinction between claims based on "out-of-court events," which are not *Heck*-barred, and claims based on misconduct at trial, which are); *Johnson v. Dossey*, 515 F.3d 778, 781–82 (7th Cir. 2008) (drawing a categorical distinction for claim-accrual purposes between Fourth Amendment false-arrest claims and *Brady* claims). Others approach *Heck* questions on a fact-intensive, case-by-case basis. *See, e.g., Matz*, 769 F.3d at 530–31 (finding that a false-confession claim was barred under *Heck* because the confession "figured prominently" in the judge's sentencing decision); *see also Hill v. Murphy*, 785 F.3d 242, 246–47 (7th Cir. 2015) (analyzing in extended dicta whether *Heck* would bar three not-yet-filed self-incrimination claims).

The clearest direction comes from *Moore*, which points toward a categorical approach. There five plaintiffs brought § 1983 claims against an infamous Chicago police commander and his subordinates who "regularly tortured people to extract statements." 771 F.3d at 445. The misconduct started in the 1970s and spanned several decades; the five plaintiffs were convicted of serious crimes in trials that "might have

been influenced by the interrogations" between 1982 and February 2009. *Id.* at 446. One plaintiff won a reversal of his conviction in 1987 and was acquitted on retrial in 1989. His claims were obviously time-barred even if *Heck* applied, and the district judge properly dismissed them as untimely. The other plaintiffs remained in prison; the judge held that their claims were *both* time-barred *and* blocked by *Heck*. *Id.*

We began by noting the contradiction in that ruling: "[I]f *Heck* governs, then these plaintiffs' claims are too early, not too late." *Id.* And whether *Heck* applied depended on the legal theory of relief. That is, we approached the *Heck* question categorically based on the nature of the claim at issue. *Id.*

Relying on *Wallace* and circuit precedent applying it, we held that *Heck* does not govern "claims based on out-of-court events, such as gathering of evidence, [which] accrue as soon as the constitutional violation occurs." *Id.* We explained that police misconduct of this kind "does not (at least, need not) imply the invalidity of any particular conviction." *Id.* Acknowledging that the *Wallace* line of cases dealt with claims for violation of the Fourth Amendment's rule against unreasonable searches and seizures, we explained that "their holdings are equally applicable to contentions that police tortured suspects during interrogation[] because that misconduct is actionable whether or not a suspect confesses[] and whether or not any statement is used in evidence at trial." *Id.* Though the opinion does not explicitly say, this sentence can only be understood to refer to a due-process theory of relief. We know from *Chavez* that a Fifth Amendment self-incrimination violation occurs when an unlawfully obtained confession is introduced in a criminal case.

*Moore* continues with a passage that helpfully illuminates the *Heck* question presented here: "To the extent that [the four plaintiffs] may be arguing that [the] police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations, *Heck* indeed bars relief until a conviction is set aside." *Id.* That's because a § 1983 claim alleging a trial-based constitutional violation necessarily seeks damages for the resulting conviction; to recover, the plaintiff must prove that the constitutional violation at trial caused his unlawful conviction. Such a claim, if successful, necessarily conflicts with a still-valid conviction.

*Moore* goes on to say that "[a]bsolute immunity for pros-ecutors and witnesses would make it hard for these plaintiffs to recover damages based on the conduct of the trials even if their convictions should be vacated some day." *Id.* (citations omitted). That explained "why all five plaintiffs stress the injuries they say they suffered at the hands of the police before judicial proceedings began." *Id.* "Those claims," we concluded, "are unaffected by *Heck* and are outside the scope of anyone's absolute immunity." *Id.*

Importantly, the analysis in *Moore* was categorical, based on the theory of relief; we did not undertake a factual evalu-ation of each plaintiff's criminal case to determine what role the constitutionally tainted trial evidence played in his conviction. That makes sense in this context. Applying *Heck* categorically is sound as a matter of limitations law where the need for clear rules is especially acute.

*Moore* points the way toward greater consistency in eval-uating *Heck* questions. Applying it here, we hold that *Heck*'s

rule of deferred accrual applies to § 1983 claims for violation
of the Fifth Amendment right against self-incrimination. A
claim of this kind seeks a civil remedy for a trial-based
constitutional violation that results in wrongful conviction
and imprisonment. Such a claim, if successful, necessarily
implies the invalidity of the conviction and under *Heck* is
neither cognizable nor accrues until the conviction has been
overturned.

As we've noted, the Eighth Circuit reached the opposite
conclusion in *Simmons v. O'Brien*, holding that *Heck* categori-
cally does not apply to a § 1983 claim for violation of the
Fifth Amendment right against self-incrimination. 77 F.3d at
1095. More specifically, in *Simmons* the plaintiff was convict-
ed of murder based in part on his videotaped confession,
and his conviction was upheld on direct appeal and post-
conviction review. He then brought a § 1983 claim alleging
that his confession was obtained without *Miranda* warnings
and while he was under physical and mental duress. The
district court thought the claim was premature under *Heck*
"until a habeas court ruled on the validity of [the] convic-
tion." *Id.* at 1094. The Eighth Circuit disagreed. Leaning
heavily on the reference to harmless-error doctrine in *Heck*'s
footnote 7, the court held: "Because harmless error analysis
is applicable to the admission at trial of coerced confessions,
judgment in favor of [the plaintiff] on this § 1983 action
challenging his confession will not *necessarily* demonstrate
the invalidity of his conviction." *Id.* at 1095.

This misreads footnote 7 for the reasons we've already
explained. More fundamentally, the Eighth Circuit's holding
is irreconcilable with *Heck* itself. The claims at issue there
included a challenge to the admission at trial of an unlawful

voice identification. *Heck*, 512 U.S. at 479. A constitutional error in admitting identification evidence at trial is subject to harmless-error review. *See United States v. Sanders*, 708 F.3d 976, 988 (7th Cir. 2013). If the Eighth Circuit is right, *Heck* would have come out differently, at least as to the unlawful-identification claim. Finally, the Eighth Circuit's approach cannot be reconciled with our decision in *Moore*, which held that claims for trial-based constitutional violations are indeed *Heck*-barred until the conviction is overturned. For these reasons, we decline to follow *Simmons*.[2]

Our holding that *Heck* applies does not mean that *all* of Johnson's Fifth Amendment claims may proceed. To the extent that Johnson seeks damages associated with alleged Fifth Amendment violations at his first trial in 2007, the claims are indeed time-barred. That conviction was reversed in 2010, and the two-year time clock began to run then. The limitations period expired long before he filed this suit in 2015. The claims arising from the second trial in 2012 are timely, however. That conviction was reversed in 2014, and Johnson filed suit less than a year later.

As an alternative ground for affirmance, the detectives invoke the absolute immunity that shields trial witnesses. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332–33 (1983)). But they did not raise the immunity defense in their motion to dismiss. "A prevailing party is entitled to defend its judgment on any ground preserved in the district court." *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014). Because immunity was

---

[2] Because this opinion creates a circuit conflict, it was circulated to all active judges. *See* 7TH CIR. R. 40(e). None favored a hearing en banc.

not preserved as an alternative ground for dismissal, the issue remains open on remand, along with other affirmative defenses (preclusion comes to mind). Finally, the detectives argue that money damages are not available for a *Miranda* violation. This argument, too, is unpreserved.

For the foregoing reasons, we REVERSE the judgment in part and REMAND for further proceedings consistent with this opinion.