In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2667

SHERARD MARTIN,

*Plaintiff-Appellant,*

*v.*

DAVIS MARINEZ, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CV-04576 — **Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 2, 2018 — DECIDED AUGUST 12, 2019

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Sherard Martin appeals the district court's grant of partial summary judgment, Fed. R. Civ. P. 56, on his suit under 42 U.S.C. § 1983 against the City of Chicago and several of its police officers for false arrest and unlawful search. Martin's suit proceeded to trial, where a jury awarded him $1.00 in damages after finding that two of the defendants

lacked reasonable suspicion or probable cause to detain him. The jury found against Martin and in favor of the officers on the remainder of his claims. Martin appeals, challenging only the district court's pretrial grant of partial summary judgment to the defendants, which limited the damages Martin could seek at trial. We affirm.

**I.**

Martin's suit arises from a traffic stop in May 2013. We recount the facts surrounding the stop and subsequent events in the light most favorable to Martin, noting disputed facts where relevant and viewing the facts on which the jury reached a verdict in the light most favorable to the verdict. On the evening of May 24, 2013, Martin was driving in Chicago when Officers Davis Marinez and Sofia Gonzalez pulled him over. According to Martin, he had not committed any traffic violations when the officers stopped him, although the officers claim they initiated the stop because Martin's tail and brake lights were not working. When Officer Gonzalez approached the car and asked Martin for his license and insurance, Martin explained that he did not have his driver's license because it had been "taken for a ticket." At that point both officers asked Martin to step out of the car as the other defendants, Officers Armando Chagoya and Elvis Turcinovic, arrived on the scene.

According to Martin, the officers forced him from the car, conducted a pat-down search, handcuffed him, and put him into a police car. At that point, they searched his car, where

they recovered a 9 mm semiautomatic handgun with a defaced serial number, and a plastic baggie of crack cocaine.[1]

Officers then took Martin into custody. At the police station, Officer Marinez learned that Martin had previously been convicted of first-degree murder and unlawful use of a weapon by a convicted felon. Ultimately Martin was transferred to Cook County Jail and charged with four Illinois felonies: (i) being an armed habitual criminal in violation of 720 ILCS § 5/24-1.7; (ii) being a felon in possession of a firearm in violation of 720 ILCS § 5/24-1.1; (iii) possessing a firearm with a defaced serial number in violation of 720 ILCS § 5/24-5(b); and possessing cocaine in violation of 720 ILCS § 570/402. He also received traffic citations under Chicago Municipal Code Section 9-76-050 (taillight operation) and 625 ILCS § 5/6-112 (outlining requirement to carry a driver's license). *Id.*

Martin spent sixty-five days—from May 24 through July 29, 2013—incarcerated in connection with the charges resulting from the traffic stop. On July 29th, a different court revoked Martin's bond when he was convicted in an unrelated criminal case. During the course of the criminal proceedings for the felony charges arising from the traffic stop, Martin filed a motion to suppress the evidence, which the trial court granted on November 7, 2013. The state then dismissed the charges against Martin through a nolle prosequi motion.

---

[1] In the officers' version of events, they spotted a handgun between Martin's legs as he stepped out of his car and placed him immediately into custody. Officer Chagoya claims to have found the plastic baggie of crack cocaine as well as $400 when he searched the car prior to having it impounded.

Martin filed this suit in federal court under 42 U.S.C. § 1983 against all of the officers involved in the stop as well as the City of Chicago (on a *respondeat superior* theory of liability), seeking money damages for violations of his Fourth Amendment rights. Martin sought civil damages totaling $110,500: $1,000 per day of his 65-day incarceration and $45,500 in lost business income—calculated at $700 per day—from his automobile dealership.

Before trial, the defendants moved for partial summary judgment, arguing that even if the stop was unlawful, once the officers saw the handgun and cocaine, they had probable cause for Martin's arrest, which limited Martin's damages to the short period between his stop and his arrest. The district court agreed, granting the defendants' motion for partial summary judgment and concluding that although Martin's § 1983 case could proceed as to the initial stop of his car and seizure of his person—before the defendants discovered the illegal gun and cocaine—he could not seek damages for conduct post-dating the discovery of contraband, including his 65-day incarceration.

Martin's case proceeded to a jury trial, limited as described above by the grant of partial summary judgment. At trial, the facts largely tracked those described above, with the same basic areas of conflicting testimony: (1) Martin testified that his tail and brake lights were both functioning when he was stopped; (2) he also testified that he handed Officer Gonzalez his traffic ticket when he was unable to produce his license; and (3) Martin maintained that the handgun was under the driver's seat, as opposed to on it and visible when he stepped out of the car as directed by Officers Gonzalez and Marinez.

The district court instructed the jury to decide the following Fourth Amendment questions: (1) whether the officers "unlawfully seized" Martin without reasonable suspicion to support a traffic stop; (2) whether they falsely arrested him without probable cause; or (3) whether they unlawfully searched his person or car without probable cause. The court also instructed the jury that if they found that Martin proved his claims, they could not award him damages for any time spent in custody after officers found the handgun, and should limit their consideration to the period of detention beginning with his traffic stop and ending when they found the gun. The jury found in favor of Martin and against Officers Marinez and Gonzalez on the unlawful seizure claim and awarded him $1.00 in compensatory damages. On that same claim, they found in favor of Officers Chagoya and Turcinovic, and on the remaining claims for false arrest and unlawful search, they found against Martin and in favor of all four officers.

Martin now appeals from the district court's grant of partial summary judgment before trial limiting the scope of damages available.

## II.

We review the district court's grant of summary judgment *de novo*, considering the record in the light most favorable to Martin and construing all reasonable inferences from the evidence in his favor. *E.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolliver v. City of Chicago*, 820 F.3d 237, 241 (7th Cir. 2016). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As

for those issues presented to the jury, we view the evidence in the light most favorable to its verdict. *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 567 (7th Cir. 2011).

Martin challenges only the district court's grant of partial summary judgment before trial. He does not dispute the jury's verdict in his favor as to the initial traffic stop and against him on all of his remaining claims. His appeal thus raises the narrow issue of what type of damages he can recover as a result of his unlawful seizure by Officers Marinez and Gonzalez. In considering this issue, we are mindful of the jury's verdict rejecting Martin's false arrest claim as well as his claim for unlawful search based on the officers' search of his vehicle. We thus consider solely whether Martin's initial unconstitutional seizure can support his claim for damages arising from losses from his subsequent incarceration on the weapon and drug charges.

Martin argues that the district court erroneously based its conclusion that he was barred from collecting damages from his wrongful incarceration on the premise that a § 1983 claimaint may not recover damages as a result of the "fruit of the poisonous tree" doctrine. According to Martin, when assessing available damages under § 1983, we should begin by asking whether the plaintiff's alleged damages were proximately caused by the constitutional violation. From that starting point, Martin maintains that he is, at the very least, entitled to have a jury decide whether his incarceration and any consequential damages arising from it were proximately caused by the unconstitutional stop.

The "basic purpose" of damages under § 1983 is to "compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978); *see also Memphis v. Cmty. Sch. District v. Stachura*, 477 U.S. 299, 306 (1986). The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Stachura*, 477 U.S. at 305)(internal quotation marks omitted)). Thus, the appropriate starting place for the damages inquiry under § 1983 is the common law of torts. *Carey*, 435 U.S. at 253.

Using the available common-law torts as a starting point, Martin's damages claim immediately runs into trouble. His complaint asserts claims for "false arrest" as well as "unlawful search" arising from the defendants' violation of his Fourth Amendment right to be free from "unreasonable searches and seizures," U.S. Const. Amend. IV. But a claim for false arrest cannot succeed because it is undisputed that officers discovered an illegal handgun and cocaine in Martin's vehicle, which gave them probable cause for his arrest, notwithstanding the previous unlawful stop. *See Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) ("A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to … commit a crime."). Given this, Martin's claim runs headlong into the rule that if an "officer had probable cause to believe that the person he arrested was involved in criminal activity, then a Fourth Amendment claim for false arrest is foreclosed." *Id.* at 679–80; *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003) (collecting cases); *see also Maniscalco v. Simon*,

712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983.") (quoting *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010)). Moreover, the fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers. *See Vaughn v. Chapman*, No. 16-1065, 2016 WL 5944726, *3 (7th Cir. 2016) (unpublished order); *see also Lingo v. City of Salem*, 832 F.3d 953, 958–59 (9th Cir. 2016); *Black v. Wigington*, 811 F.3d 1259, 1267–68 (11th Cir. 2016); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997). And although Martin's complaint is limited to claims for false arrest and unlawful search, it bears noting that the existence of probable cause for the arrest would also bar recovery on a theory of malicious prosecution. *See Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878) ("The existence of a want of probable cause is, as we have seen, essential to every suit for a malicious prosecution."); *Thompson v. City of Chicago*, 722 F.3d 963, 969 (7th Cir. 2013) (noting that malicious prosecution claim under Illinois law requires proof that underlying criminal proceeding concluded in manner indicating innocence).

Ignoring the insurmountable hurdles to his claim presented by possible tort law analogs, Martin insists that he is entitled to damages for his incarceration solely on a theory of proximate cause—under the general rule of *Carey* that a damages award under § 1983 should compensate for what Martin characterizes as any injuries arising as a result of a constitutional deprivation. Although the district court considered Martin's claim that

his entitlement to damages for post-arrest incarceration should be resolved using a proximate cause analysis, after reviewing the cases Martin cited, the court deemed such an approach unnecessary in light of its conclusion that the existence of probable cause after the initial detention foreclosed any further damages.

Citing *Carey*, Martin points out that he should not be barred from recovering § 1983 damages simply because recovery would not be permitted under a common-law tort such as false arrest. As the Court explained in *Carey*, "the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law torts." *Carey*, 435 U.S. at 258. Thus, the Court recognized that although the common law elements of damages and the prerequisites for their recovery are the appropriate "starting point for the inquiry under § 1983," those common-law tort theories may not "provide a complete solution to the damages issues in every § 1983 case." *Id.* at 258. The Court accordingly set out an approach to handling those situations where the common-law tort theories would not allow recovery but there were constitutional interests implicated that might nonetheless warrant redress when violated. *Carey* explained that "to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interest protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." *Id.* at 258–59. Under that rationale, we must determine whether the post-arrest damages

for incarceration Martin seeks would effectively redress the interests the Fourth Amendment is intended to protect.

We have not resolved the specific question whether a plaintiff may recover damages for post-arrest incarceration following a Fourth Amendment violation when probable cause supported the ultimate arrest and initiation of criminal proceedings, but the application of the exclusionary rule spared the plaintiff from the criminal prosecution. As Martin notes, there is a split of authority on the question of whether a defendant whose Fourth or Fifth Amendment rights have been violated can recover damages for incarceration, legal defense fees, or emotional distress in a subsequent civil suit under § 1983. *Compare Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (no damages for costs associated with defending against gun possession charges when evidence for charges arose from unlawful search); *Hector v. Watt*, 235 F.3d 154, 155–59 (3d Cir. 2000) (no damages for costs incurred in criminal prosecution for drug possession charges arising from unconstitutional search) *with Borunda v. Richmond*, 885 F.2d 1384, 1389–90 (9th Cir. 1988) (allowing admission of acquittal of criminal charges in plaintiffs' subsequent § 1983 suit to recover money spent on attorneys' fees defending criminal charges); *see also Train v. City of Albuquerque*, 629 F. Supp.2d 1243, 1255 (D.N.M. 2009) (allowing jury to determine whether unlawful search that led to gun possession charges proxi-mately caused plaintiff's criminal defense costs, loss of income, and emotional distress damages).

Martin, however, insists that in *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir. 1970), we held that such damages are recoverable and that here the district court was obligated

under *Kerr* to allow his damages claim. The district court rejected *Kerr* as controlling here given "factual differences" and case law developments since it was "decided nearly 47 years ago." (Appellant's App. at A-14.)

Like the district court, we reject Martin's claim that *Kerr* is dispositive on the question of allowable damages. Martin relies almost exclusively on a sentence from *Kerr* stating without further explanation that "[a] plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant." *Kerr*, 424 F.2d at 1141. The minor plaintiff in *Kerr* alleged that Chicago police had violated his Fifth Amendment constitutional rights by using physical force to obtain an involuntary confession, which was used to detain him for 18 months awaiting and during trial, when a nolle prosequi was entered after the jury was unable to reach a verdict. *Kerr*, 424 F.2d at 1136–37. The precise issue in *Kerr* was thus whether the plaintiff should have been allowed to present evidence in his civil case of attorneys' fees expended in his underlying criminal case, which hinged entirely on his involuntary confession. *Id.* at 1141.

So although in the abstract *Kerr* stands for the proposition that foreseeable damages arising from a constitutional violation may be recovered, it sheds no light on the precise question Martin's appeal poses.[2] Using the framework of *Carey,* it is easy

---

[2]  The same is true for a much more recent case from our circuit cited by Martin in his reply brief, *Johnson v. Winstead*, 900 F.3d 428 (7th Cir. 2018). Martin characterizes *Johnson* as holding that damages could be recovered

(continued...)

to see that the interest protected by the Fifth Amendment right against self-incrimination was directly implicated by the coerced confession and resulting criminal trial. *Kerr* is thus entirely in keeping with *Carey* in the sense that the damages sought—expenses of defending the criminal trial prosecuted on the strength of the involuntary confession—arise directly from the constitutional violation and redress the precise interest the Fifth Amendment protects: the right not to be compelled in a criminal case to be a witness against oneself. Simply put, nothing in *Kerr* sheds any light on Martin's claim that he is entitled to pursue damages for his post-arrest incarceration.

That leaves us with the handful of appellate courts that have considered the specific issue of the proper scope of civil damages for damages following an illegal search or seizure. In *Townes*, the Second Circuit considered whether to award compensatory damages in a § 1983 civil suit after police stopped a taxi without probable cause and discovered an illegal firearm and cocaine. The plaintiff's motion to suppress

---

[2] (...continued)

for incarceration subsequent to a failure to provide *Miranda* warnings, despite the fact that a failure to provide such warnings is itself not a violation of the Fifth Amendment right against self-incrimination. But Martin misreads *Johnson*, which specifies that an actual Fifth Amendment violation occurs only when the information acquired without *Miranda* warnings is introduced at trial to secure a criminal conviction. Martin claims *Johnson* would allow damages based on a violation of a prophylactic rule–the failure to give *Miranda* warnings itself—but he misreads *Johnson*. The damages *Johnson* contemplates would be those arising from incarceration for the actual Fifth Amendment violation of admitting the statements at trial to secure a criminal conviction, *not*, as Martin suggests, for a violation of a prophylactic rule. *Id.* at 434–35.

the firearm was initially denied, and he was convicted of unlawful possession of a firearm by a felon. Over two years later, the state appellate division reversed the conviction on the grounds that police had lacked probable cause to stop and search the taxicab. In his subsequent civil suit, the *Townes* plaintiff sought to recover compensatory damages arising from his conviction and incarceration. *Id.* at 149.

Citing *Carey,* the panel in *Townes* rejected the plaintiff's damages claim. After ruling out recovery under any common-law tort theories, the Second Circuit also rejected proximate cause as a possible basis for recovery. In doing so, the court noted that "the chain on causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment"—specifically, the trial court's failure to suppress the incriminating evidence before trial. *Id.* at 147. In an attempt to distinguish *Townes*, Martin seizes this causation analysis, but ignores the rest of the holding in *Townes,* which would squarely foreclose Martin's claim.

In addition to concluding that the trial court's refusal to suppress the evidence of the unlawful search was an intervening and superseding cause of the conviction, the Second Circuit noted that the plaintiff was "foreclosed from recovery for a second, independent reason: the injury he pleads (a violation of his Fourth Amendment right to be free from unreasonable searches and seizures) does not fit the damages he seeks (compensation for his conviction and incarceration)." *Id.* Bearing in mind the Supreme Court's directive in *Carey* to tailor § 1983 liability to match the affected constitutional rights,

*see Carey*, 435 U.S. at 258, *Townes* pointed out a "gross disconnect" between the constitutional violation (the Fourth Amendment right to be free from unreasonable searches and seizures) and the injury for which recovery was sought (the subsequent conviction and incarceration). *Townes*, 176 F.3d at 148. As the panel in *Townes* observed, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Id.*

*Townes* thus reasoned that to award damages for a conviction and incarceration that followed an illegal search would be tantamount to awarding a windfall benefit in that the plaintiff "already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment." *Id.*; *cf. United States v. Calandra*, 414 U.S. 338, 347 (1974) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . [i]nstead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]"). The district court found the rationale of *Townes* persuasive and noted that it had been cited repeatedly by district courts in our circuit assessing civil damages for Fourth Amendment violations. *See Cannon v. Christopher*, No. 1:06-CV-267, 2007 WL 2609893, at *4 ("Several federal courts in the Seventh Circuit have adopted the *Townes* principle and applied it to dismiss cases where probable cause existed despite an allegation of an improper initial stop and search."); *see also Williams v. Carroll*, No. 08 C 4169, 2010 WL 5463362, at *4–5 (N.D. Ill. Dec. 29, 2010) (collecting cases and observing that

although "holding of *Townes* has not been expressly adopted here in the Seventh Circuit, it has not been meaningfully challenged in this (or any other) circuit. On the other hand, it has been relied upon in numerous district court opinions.").

The following year, the Third Circuit reached a similar conclusion in *Hector v. Watt*, *supra*. In *Hector*, the plaintiff brought a § 1983 suit to recover compensation for expenses incurred during his criminal prosecution based on 80 pounds of hallucinogenic mushrooms seized from his airplane. Like Martin, the plaintiff had successfully litigated a suppression motion for the seized drugs and the prosecution against him was dismissed.

The Third Circuit first concluded, as we did above, that existing common-law torts could not provide the basis for the requested damages. *Hector*, 235 F.3d at 156 ("Given the Supreme Court's mandate that we look to similar common-law causes of action, Hector appears to be on the horns of a dilemma. If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurred after an indictment, excluding all the damages he seeks. But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution.")

In rejecting proximate cause as a theory for recovery, the Third Circuit, like the Second Circuit in *Townes*, concluded that the policy reasons behind the exclusionary rule would not be served by allowing the plaintiff to "continue to benefit from the exclusionary rule in his § 1983 suit and be relieved of defense

costs from a prosecution that was terminated only because of the exclusionary rule." *Id.* at 158. Specifically, the court in *Hector* carefully considered the competing policy concerns that might be served by allowing damages arising from defending a criminal proceeding triggered by the discovery of contraband via an unconstitutional search. Bearing in mind the goal of the exclusionary rule to deter Fourth Amendment violations, the court concluded that policy considerations militated against any incremental contribution to such deterrence that might be had by allowing for civil damages arising well after the initial constitutional privacy violation that led to the discovery of contraband. *Id.* at 159.

The court in *Hector* thus ultimately concluded that although there would admittedly be some deterrent value to imposing liability for *all* consequences that unfold from a search or seizure unsupported by probable cause, the downsides of such an approach would outweigh its benefits. Specifically, the magnitude of the potential liability would routinely be unrelated to the seriousness of the underlying Fourth Amendment violation, in the sense that the damages award would often turn not on the nature of the unconstitutional invasion of privacy but on whatever contraband officers happened to uncover. *Id.* Noting that it would be irresponsible to impose potential liability so disproportionate to the underlying constitutional violation and that neither the scholarly authority nor any common-law tort supported such a theory of recovery, the Third Circuit concurred with *Townes* to hold that, "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy–including (where appropriate) damages for physical injury, property

damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Id.* at 148 (*quoting Townes*, 176 F.3d at 148).

As Martin notes, however, the Ninth Circuit has concluded that damages for incarceration and legal fees arising from an unlawful detention and search may be recoverable in a § 1983 suit. In *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), the court rejected police officers' appeal from a civil damages award in favor of the plaintiffs after a finding that the officers arrested them without probable cause. The precise issue on appeal was whether the district court erred by admitting evidence that the plaintiffs had been acquitted of the underlying criminal charges as well as evidence of the plaintiffs' attorneys' fees incurred defending against the charges. *Borunda*, 885 F.2d at 1386. The court concluded that a "plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Id.* at 1389.

In *Borunda*, the court concluded that the plaintiffs were entitled to recovery because the "jury was entitled to find, amidst the striking omissions in the police report, as well as the two officers' conflicting accounts of the incident, that appellants procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Id.* at 1390. The attorneys' fees incurred defending the criminal prosecutions were thus directly attributable to the defendant officers'

misconduct—i.e., falsifying information in order to obtain a criminal complaint. *Id.*

Thus, while *Borunda*, like *Kerr*, may in the abstract stand for the proposition that civil damages may be recoverable for expenses related to a wrongful search or arrest, nothing about *Borunda*'s rationale is particularly helpful to Martin. First, in *Borunda*, the very basis for the damages award was the jury's finding that the defendant officers had arrested the plaintiffs *without* probable cause and had likely fabricated facts to secure a criminal complaint against the plaintiffs. *Id.* at 1386–88. On the contrary, the jury here concluded that although Officers Marinez and Gonzalez unlawfully seized Martin without reasonable suspicion, it found *against* Martin on the claim that officers either arrested him or searched him or his car without probable cause. So unlike the plaintiffs in *Borunda*, whose claim succeeded precisely because the jury concluded that the defendant officers manufactured a tale to support probable cause for both the arrest and subsequent prosecutions, the jury here concluded that probable cause existed for *both* Martin's arrest and any search of his automobile that yielded contraband. The holding in *Borunda* is thus a far cry from supporting the outcome Martin seeks here. Although Martin asserts that *Borunda* supports his theory that he may recover damages under a proximate cause analysis, *Borunda* adds little to the question of foreseeability given the jury's finding there that the defendant officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Id.* at 1390. That finding leads fairly uncontroversially to the conclusion that the plaintiffs' attorney fees "incurred during the criminal prosecutions was a direct and

foreseeable consequence of the appellants' unlawful conduct." *Id.* Not so for Martin.

Martin's scenario is far more like those in *Townes* and *Hector*, where probable cause for an arrest existed despite an encounter that initially violated the Fourth Amendment. First, the precise relevant questions in *Borunda* were evidentiary: whether the district court had erred in admitting evidence of the plaintiffs' prior acquittal of the criminal charges and evidence of attorneys' fees spent during the criminal proceeding. *Id.* at 1389. And in *Borunda*, the court considered the jury's finding that the officers lacked probable cause and concluded it was defensible in light of general tort principles of recovery; the jury's verdict here cuts in the opposite direction given that, with the exception of the initial traffic stop, the jury concluded that the defendants *did* have probable cause for everything that followed.

Finally, Martin relies heavily on a case from the District of New Mexico holding that a plaintiff raising a constitutional claim based on an illegal search may be permitted to recover damages for post-indictment proceedings if the constitutional deprivation proximately caused the damages. *See generally Train v. City of Albuquerque*, 629 F. Supp.2d 1243 (D.N.M. 2009). The district court in *Train* concluded that in addition to protecting privacy, as the courts in *Townes* and *Hector* recognized, the Fourth Amendment had been described in the Tenth Circuit as protecting "'liberty, property, and privacy interests—a person's sense of security and individual dignity.'" *Id.* at 1252 (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1196 (10th Cir. 2001)). Believing that the Tenth Circuit did

not "take such a narrow view of the Fourth Amendment" as the one advanced in *Townes* and *Hector*, the district court in *Train* concluded as follows:

> According to the Tenth Circuit's guidance on the Fourth Amendment, any damage award available for a Fourth-Amendment violation under 41 U.S.C. § 1983 should be tailored to compensating losses of liberty, property, privacy, and a person's sense of security and individual dignity. While it may not be an evil to uncover crime, the drafters obviously did not think uncovering crime was a higher value than protecting and securing a person's home from unreasonable searches. Federal criminal charges, federal detention, and all of the negative consequences of those charges and attendant to federal custody implicated Train's interest in liberty and his sense of security and individual dignity. That imprisonment occasioned economic losses. Such losses should be compensable, given that they implicate the interests that the Tenth Circuit has explained the Fourth Amendment protects.

*Id.*

Although Martin urges us to reject the logic of both *Townes* and *Hector* in favor of that found in *Train*, he fails to identify any Seventh Circuit law urging the broad view of interests protected by the Fourth Amendment that drove the district court's conclusion in *Train*. Nor did *Train* analyze the plaintiff's claim in light of common-law false arrest. Because Martin explicitly framed his claim as one for false arrest,

(Pl. Compl. 1), we are bound by our own precedent limiting damages regardless of what we might conclude under a proximate cause analysis. *See Gauger v. Hendle*, 349 F.3d 354, 362–63 (7th Cir. 2003), *overruled* on other grounds by *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)) (available damages for false arrest cover only time of detention until issuance of process or arraignment). And although *Train* ably sets forth the competing rationale for an expansive view of both the interests protected by the Fourth Amendment as well as damages available for their breach, the rationale in *Townes* and *Hector*, in addition to being more widely accepted as discussed *infra*, is also more applicable to the facts here.

Given the jury's verdict against Martin on his claims for false arrest and unlawful search, the only Fourth Amendment injury being redressed is the brief initial seizure before officers asked Martin for his license. Allowing Martin to recover damages for his subsequent imprisonment, set in motion by an arrest supported by probable cause, would amount to precisely the sort of mismatch between the violation and the damages that *Townes* and *Hector* sought to avoid. We do not go so far as to hold that post-arrest damages may *never* be recovered, only that here such damages would be inconsistent with the rule in *Carey* that damages should be tailored to protect the right in question, 435 U.S. at 258. Here, the right in question is Martin's Fourth Amendment right not to be stopped by officers without reasonable suspicion. That right was vindicated by the nominal damages the jury awarded Martin.

It is thus ultimately unnecessary to delve into the thorny question of proximate cause. *See Hector*, 235 F.3d at 161 ("Given that the cases on intervening causes are legion and difficult to reconcile ... and that we have other, sufficient grounds for resolving this case, we will not reach the issue of intervening causation."). That said, it is worth noting that there is no reason Martin's claim would fare any better under that analysis. Martin's stop was certainly the but-for cause of his imprisonment in the sense that but for the stop officers would never have discovered the handgun and cocaine and arrested him. But that tells us little about whether the stop was the *proximate cause* of his incarceration. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) ("The *term* 'proximate cause' is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability."). Any number of superseding, intervening events could have broken the chain of causation, from the discovery of the contraband itself to the independent decision to deny bail, which was undoubtedly predicated in part on Martin's criminal history and other factors unrelated to the initial stop.

Moreover, consideration of proximate cause takes us back around to where we began: with the observation that probable cause for Martin's arrest, which the jury concluded existed shortly after Martin was pulled over, forecloses Martin's claim for damages from all that followed. *See Townes*, 176 F.3d at 146 (recognizing that "ordinary principles of tort causation" apply to initial stop and search but concluding that allowing the fruit of the poisonous tree doctrine to "elongate the chain of causation" would "distort basic tort concepts of proximate causation"); *accord Edwards*, 2012 WL 983788 at *7–8 (noting the

same). In short, the damages arising from Martin's incarceration are simply too attenuated from and unrelated to the Fourth Amendment violation he has proven: a brief detention unsupported by probable cause or reasonable suspicion. His damages award was thus properly limited to the harm arising from his unconstitutional detention before his lawful arrest. The decision regarding those damages was left to the jury, which determined one dollar was the proper amount.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.